**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RICHARD J. SILVERBERG | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 25-2729 |
| DUPONT DE NEMOURS, INC. *ET AL.* | : | |

# MEMORANDUM OPINION

## I. INTRODUCTION

This lawsuit ("*Silverberg V*") is the fifth iteration of Plaintiff Richard Silverberg's relentless campaign of *pro se* litigation in this Court[1] seeking to circumvent state court proceedings and adjudications against him in two tax collection lawsuits and related attorney disciplinary proceedings. Like Plaintiff's previous federal lawsuits—all of which have been dismissed—*Silverberg V* is premised on the same essential theory and asserts virtually identical federal and state law causes of action against thirty-two government, entity, and individual defendants, most of which were also defendants in two or more of Silverberg's previous lawsuits.

Presently before the Court are the following Motions:

- Joint Motion for Pre-Filing Injunction and Dismissal (the "Motion for Injunction/Dismissal" ECF No. 13) of Defendants the City of Philadelphia ("City"), former City Mayor James Kenney, former City Solicitor Marcel S. Pratt, Esquire, former City Solicitor Diana Cortes, Esquire, Divisional Deputy City Solicitor Marissa O'Connell, Esquire, and former Deputy City Solicitor Brian R. Cullin, Esquire (collectively, the "City Defendants"); Dow, Inc. ("Dow") and former Dow and DowDuPont executive Andrew Liveris; The Vanguard Group, Inc. ("Vanguard") and Vanguard executive Timothy Buckley; William Penn Foundation ("William Penn") and William Penn Board Chair Janet Haas; Liberty Mutual Group, Inc. ("Liberty") and Liberty executive David H. Long; DuPont de Nemours, Inc. ("DuPont") and former DuPont and DowDuPont executive Edward Breen; International Flavors & Fragrances, Inc. ("IFF") and IFF executive Andreas Fibig; Gellert Scali Busenkell & Brown LLC ("Gellert Scali") and Gellert Scali partner Gary F. Seitz; Avantor, Inc. ("Avantor") and Avantor Chairman and former Rohm & Haas Company ("R&H") executive Rajiv Gupta; Corteva, Inc.

[1] This case was transferred to the undersigned on August 24, 2026.

("Corteva"); and Ballard Spahr LLP ("Ballard") (collectively, the "Joint Defendants"); and,

- Motion to Dismiss Claims Against the William Penn Foundation and Janet Haas, M.D. (the "William Penn/Haas Motion," ECF No. 25).

Also named as Defendants in this action are Philadelphia Court of Common Pleas Judges Joshua H. Roberts ("Judge Roberts") and Daniel J. Anders ("Judge Anders") (collectively, the "Judicial Defendants"); The Disciplinary Board of the Supreme Court of Pennsylvania ("Disciplinary Board"), former Disciplinary Board Chair David S. Senoff, Esquire, and Disciplinary Board member Brian S. Neft, Esquire (collectively, the "Board Defendants"); the Office of Disciplinary Counsel ("ODC"); and ODC Chief Disciplinary Counsel Thomas J. Farrell, Esquire, and ODC Disciplinary Counsel Richard Hernandez, Esquire (collectively, "ODC Counsel").[2]

## II. BACKGROUND

*Silverberg V* is the latest in a succession of related *pro se* lawsuits initiated by Plaintiff. *See Silverberg v. City of Philadelphia, et al.*, No. 19-2691, filed May 20, 2019 ("*Silverberg I*"); *Silverberg, et al. v. City of Philadelphia, et al.*, No. 20-5034, filed October 12, 2020 ("*Silverberg II*"); *Silverberg v. DuPont de Nemours, Inc., et al.*, No. 23-1868, filed May 17, 2023 ("*Silverberg III*"); and, *Silverberg v. DuPont de Nemours, Inc., et al.*, No. 24-924, filed March 4, 2024 ("*Silverberg IV*"). The Court dismissed *Silverberg I*, *III*, and *IV* at the pleading stage, and Plaintiff abandoned *Silverberg II* on the same day the Third Circuit Court of Appeals affirmed the dismissal of *Silverberg I* and while a defense motion for sanctions against Silverberg was pending. *See Silverberg I*, 2020 WL 108619 (E.D. Pa. Jan. 8, 2020) (dismissing amended complaint without prejudice under *Rooker-Feldman* and *Younger* doctrines and principles of comity), *aff'd* 847 F.

[2] With the exception of Judge Roberts and Judge Anders, Defendants are referred to, where necessary, by last name.

App'x 152 (3d Cir. 2021); *Silverberg II*, ECF No. 30 (voluntarily dismissing all claims as to all defendants the same day the Third Circuit Court of Appeals affirmed dismissal of *Silverberg I*); *Silverberg III*, 2024 WL 4566110 (E.D. Pa. Oct. 24, 2024) (dismissing amended complaint under *Rooker-Feldman* doctrine and finding dismissal with prejudice warranted based on futility and inequity of permitting amendment) and *Silverberg IV*, 2025 WL 1314088, at *1 (E.D. Pa. May 5, 2025) (dismissing amended complaint based on the *Rooker-Feldman* and *Younger* doctrines, and Eleventh Amendment, judicial, and quasi-judicial immunity, and finding dismissal with prejudice warranted for the same reasons as in *Silverberg III*), *aff'd as modified sub nom. Silverberg v. DuPont de Nemours, Inc.; Dow, Inc.; Corteva, Inc.; Int'l Flavors & Fragrances, Inc.; Avantor, Inc., et al.* ("*Silverberg III & IV*"), Nos. 24-2867 and 25-1642, 2026 WL 2412522 (3d Cir. Aug. 18, 2026).

In each of these cases, Silverberg has asserted similar, if not identical, claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. ("RICO"), 42 U.S.C. § 1983, and state common law based on variations of the same theory: that Silverberg is the victim of various defendants' collusive schemes to pursue pretextually legitimate state court proceedings against him in order to deter, dissuade, and/or prevent him from taking actions allegedly adverse to defendants' interests, and to threaten, harass, intimidate, coerce, and/or retaliate against him for taking the allegedly adverse actions, engaging in protected activity, and exercising his rights. (*See Silververg I* Am. Compl., ECF No. 19, ¶¶ 90, 96, 139-40, 159, 175; *Silverberg II* Am. Compl., ECF No. 14, ¶¶ 99, 104, 107; *Silverberg III* Am. Compl., ECF No. 81, ¶¶ 47, 182, 190, 221, 240, 271, 319, 332, 368, 371, ECF No.; *Silverberg IV* Am. Compl., ECF No. 64, ¶¶ 47, 55, 67, 100, 105, 122, 131, 150, 146, 165.)

To be sure, Silverberg has adapted his theory by reimagining the purpose and scope of the

alleged conspiracies, adding countless "factual" allegations, and identifying a host of additional alleged conspirators, to encompass additional state court proceedings against him. Nonetheless, the premise of each successive lawsuit is the same. The Court has described the *Silverberg I-IV* allegations and claims in its previous opinions cited above, as has the Third Circuit Court of Appeals in its opinions affirming the dismissals of *Silverberg I*, *III*, and *IV*. We will not repeat that effort here except as necessary to address the sufficiency of Plaintiff's claims in *Silverberg V*.

### A. The Tax and PUFTA Cases and *Silverberg I* and *II*

*Silverberg I* and *II* sought to circumvent judgments entered against Plaintiff and related entities in tax collection lawsuits brought by the City in the Philadelphia Court of Common Pleas. *See City of Philadelphia v. Richard J. Silverberg & Associates, P.C. et al.*, No. 080301510 (Phila. Cty. Ct. Com. Pl.) (the "Tax Case"); *City of Philadelphia v. Richard J. Silverberg et al.*, No. 190903805 (the "PUFTA Case").[3]

The City filed the Tax Case in March 2008 against Silverberg and his former law firm, seeking to recover unpaid business privilege and wage taxes for periods between 1992 and 2004. In June 2008, the state court entered default judgment against Silverberg and his firm in the amount of unpaid taxes, interest, and penalties. In 2017, the City renewed its efforts to collect the Tax Case judgment, and Silverberg unsuccessfully moved to stop enforcement of the judgment. *See City of Philadelphia v. Richard J. Silverberg & Assocs., P.C.*, No. 1783 C.D. 2017, 2019 WL 1502343 (Pa. Commw. Ct. Apr. 4, 2019), *appeal denied*, 656 Pa. 211 (2019).

[3] PUFTA refers to the Pennsylvania Uniform Fraudulent Transfer Act, 12 Pa. Stat. and Cons. Stat. Ann. § 5101, *et seq.*, now known as the Pennsylvania Uniform Voidable Transactions Act. The dockets for the Tax Case, No. 080301510, and the PUFTA Case, No. 190903805, and the filings therein are available at: https://fjdefile.phila.gov/efsfjd/zk_fjd_public_qry_03.zp_dktrpt_search.

In October 2019, the City filed the PUFTA Case against Silverberg and ELS Realco, LLC ("ELS"), alleging that Silverberg and ELS engaged in the fraudulent transfer of a Philadelphia property Silverberg owned to ELS to avoid the City's efforts to collect the Tax Case judgment. In November 2020, the state court entered default judgments against Silverberg and ELS and enjoined them from disposing of the Philadelphia property. Silverberg and ELS appealed the default judgments and filed a series of emergency applications for special relief in the appeal, seeking to enjoin or stay the PUFTA proceedings. The Pennsylvania Commonwealth Court denied the emergency applications, and Silverberg withdrew the PUFTA appeal in May 2021. The state court ultimately appointed a sequestrator in the PUFTA Case, ordered Silverberg to vacate the Philadelphia property, and authorized the sequestrator to take control of the property.

In June 2019, while Silverberg's petition for allowance of appeal in the Tax Case was pending before the Pennsylvania Supreme Court, Silverberg filed *Silverberg I* in this Court against the City, Kenney, Pratt, Cortes, O'Connell, Cullin, and others. The *Silverberg I* Amended Complaint alleged that the defendants sought collection of the Tax Case judgment not for the legitimate purpose of recovering taxes owed, but as pretext for a collusive effort to make up for revenue shortfall from the City's beverage tax; protect the City's "Rebuild" program and other initiatives; and harass, threaten, intimidate, and retaliate against Silverberg for exercising his rights in connection with the Tax Case. Based on this theory, *Silverberg I* asserted § 1983 claims for violation of his First and Fourteenth Amendment rights; RICO claims of conspiracy, obstruction of justice, and mail and wire fraud; and common law claims for abuse of process, fraud, negligent misrepresentation, intentional infliction of emotional distress, and civil conspiracy. On January 8, 2020, this Court dismissed *Silverberg I* based on the *Rooker-Feldman* and *Younger* doctrines and principles of comity. *See Silverberg I,* 2020 WL 108619, at *5-7.

On October 12, 2020, eleven days after the City filed the PUFTA Case, Silverberg filed *Silverberg II* against the *Silverberg I* defendants, William Penn, Haas, and a former City Managing Director (plus 15 John Does), this time alleging unlawful conduct in connection with both the Tax and PUFTA Cases. (*See Silverberg II*, Am. Compl., ECF No. 14.) On January 19, 2021, Silverberg filed an Amended Complaint also naming as a defendant Judge Roberts, who presided over certain proceedings in the PUFTA Case. The *Silverberg II* Amended Complaint alleged the same scheme as *Silverberg I*, but added allegations regarding the PUFTA Case, including many asserting that Judge Roberts engaged in improper and illegitimate conduct in those proceedings. *Silverberg II* asserted the same causes of action as *Silverberg I* and additionally asserted separate aiding and abetting claims against Judge Roberts. On February 8, 2021, the City Defendants filed a motion for sanctions against Silverberg, who voluntarily dismissed *Silverberg II* on February 23, 2021, the same day the Third Circuit Court of Appeals affirmed the dismissal of *Silverberg I*.

**B. The Disciplinary Proceedings**[4]

By letter dated March 24, 2022, the ODC notified Silverberg that it he was the subject of attorney misconduct complaints submitted by Cullin and Judge Anders relating to the Tax and PUFTA Cases and *Silverberg I* and *II*. (*See Silverberg III*, ODC Form DB-7, ECF No. 8-1.) On December 6, 2023, the ODC filed a 210-paragraph Petition for Discipline against Silverberg. (*See id.*, Petition for Discipline, ECF No. 8-3.) The Petition for Discipline alleged that Silverberg had violated the Pennsylvania Rules of Professional Conduct by, *inter alia*, repeatedly failing to comply with court orders in the Tax/PUFTA Cases and by making numerous knowingly or

[4] The Disciplinary Proceedings are captioned *ODC v. Richard Joseph Silverberg*, No. 172 DB 2023. The Disciplinary Proceedings docket is available at: https://www.padisciplinaryboard.org/for-the-public/find-attorney/docket?attorneyId=48329&docketNumber=172+DB+2023 (last visited Oct. 30, 2026.).

recklessly false and fraudulent statements about Judge Roberts in the Tax/PUFTA Cases, in letters transmitted to senior judicial officers, and in filings in *Silverberg II*. (*Id.*) Silverberg filed an Answer to the Petition on January 24, 2024; a Disciplinary Board Committee held a hearing on May 1-2, 2024; the ODC and Silverberg submitted post-hearing briefs on July 1, and August 9, 2024, respectfully; and the Disciplinary Board Committee filed its Report and Recommendations on October 4, 2024. *See* Disciplinary Proceedings docket.

The Disciplinary Board adjudicated the matter on January 23, 2025, and filed its Report and Recommendations ("Disciplinary Board R&R") with the Pennsylvania Supreme Court on March 11, 2025. The Disciplinary Board R&R concluded that Silverberg had violated Rules of Professional Conduct 3.1, 3.3(a)(1), 3.4(a), 8.2(a), 8.4(c), and 8.4(d), and unanimously recommended that he be suspended from the practice of law for five years.[5]
*See ODC v. Silverberg,* (Pa. S.Ct. May 16, 2025), available at: https://www.pacourts.us/assets/opinions/DisciplinaryBoard/out/172DB2023-Silverberg.pdf (last visited Oct. 30, 2026). On May 27, 2025, the Pennsylvania Supreme Court issued an Order suspending Silverberg "from the Bar of this Commonwealth for a period of five years" (the "Suspension Order").[6] *Id.*

### C. *Silverberg III* and *IV* and the "Proxy War" Theory

On May 17, 2023, Plaintiff resumed his federal court attack on the state proceedings with the filing of *Silverberg III*. The 117-page, 393-paragraph Amended Complaint in *Silverberg III*

---

[5] The Disciplinary Board R&R noted that Silverberg did not appear for the prehearing conference scheduled by the Hearing Committee or submit witness or exhibit lists under the prehearing conference order, and he did not attend the hearing held on May 1 and 2, 2024. *See* Disciplinary Board R&R at 3.

[6] As a result of the Suspension Order, Silverberg was disbarred by the United States Supreme Court on May 8, 2025, *see Matter of Disbarment of Silverberg*, 146 S. Ct. 915 (2025), and he is the subject of a pending reciprocal disciplinary proceeding in this Court pursuant to Local Rule of Civil Procedure 83.6(II), *see In re Silverberg*, No. 26-mc-15, at ECF No. 2 (E.D. Pa. Feb. 19, 2026) (ordering Plaintiff to show cause why reciprocal five-year suspension should not be imposed).

named 24 defendants, 8 of which also were defendants in *Silverberg I* and/or *II*, and asserted the same RICO and § 1983 claims as *Silverberg I* and *II,* along with similar common law claims. With *Silverberg III*, Plaintiff advanced a new iteration of his theory, alleging that the Tax and PUFTA Cases were pursued in furtherance of an expansive and enduring conspiracy—the purported "proxy war"— intended to prevent Silverberg from publishing his "anticipated" book detailing defendants' alleged wrongdoing in connection with the "*Jackson* odyssey." *See Silverberg III*, 2024 WL 4566110, at *3, 7 (summarizing *Silverberg III* "proxy war" theory); *see also Silverberg III & IV*, 2026 WL 2412522, at *2 (same). The "*Jackson* Odyssey" refers to state and federal court lawsuits Silverberg pursued on behalf of a former client against Rohm & Haas and others from 1999 until approximately 2010. *See Silverberg III*, 2024 WL 4566110, at *3-4 (summarizing the *Jackson* litigation). Silverberg did not prevail in the *Jackson* state court lawsuits, and the federal actions accusing the *Jackson* defendants of malfeasance in the state actions were ultimately dismissed.[7]

In *Silverberg III*, Plaintiff alleged that the defendants launched the "proxy war" in response to a 2016 email he sent to "counsel for certain defendants" in which he stated:

> It seems like a good time to let you and others know that I will soon be completing my book concerning the Jackson odyssey. As I expected, this project has generated great interest since the cases are a window into a complex and disturbing aspect of corporate America, the conduct of corporate officials and corporate counsel, and our broken justice system. While the book examines the underlying conduct it also explores the business judgment, legal and strategic decisions, individual actions, and judicial proceedings that cumulatively led to and killed-off multiple causes of action.

[7] In the federal *Jackson* litigation, the court sanctioned Silverberg for "filing a complaint violative of Rule 11." *See Jackson v. Rohm & Haas Co.*, No. 05-4988, 2006 WL 680933 (E.D. Pa. Mar. 9, 2006) (Pollak, J.), *aff'd*, 366 F. App'x 342 (3d Cir. 2010), *cert. denied*, 562 U.S. 840 (2010). Later, the court dismissed plaintiff's RICO and ERISA claims in a consolidated amended complaint "as a sanction for, *inter alia*, [plaintiff's] continuing failure to file a properly-pleaded complaint and his chronic obstinacy regarding the court's orders and decisions." *Jackson v. Rohm & Haas Co.*, No. 05-4988, 2009 WL 773936, at *1-2 (E.D. Pa. Mar. 19, 2009) (Pollak, J.), aff'd, 366 F. App'x 342 (3d Cir. 2010).

*Id.* at *7. The Amended Complaint alleged that since Silverberg sent that email, the City has filed and pursued the Tax and PUFTA Cases, not for the legitimate purpose of recovering unpaid taxes, but as part of the "proxy war" on behalf of, and in collusion with, the two dozen entity and individual defendants in order to "delay, deter, dissuade, and/or prevent" him from publishing or disseminating his "anticipated" book or any account of its subject matter, "to retaliate against [him] for engaging in protected activity"; and "to entangle [him] in baseless litigation, a not uncommon tactic by certain abusers, which causes resources to be squandered and is itself wrongful/unlawful." *Id.* The Amended Complaint further alleged that the "proxy war" "also has included a malicious smear campaign, predicated upon knowing and/or manufactured falsehoods, intended to damage/destroy plaintiff's professional and personal reputation, and which has included the filing of baseless Complaints with the Disciplinary Board of the Supreme Court of Pennsylvania." *Id.*

Plaintiff filed *Silverberg IV* on March 4, 2024, three months after the ODC filed the Petition for Discipline. The *Silverberg IV* Amended Complaint named all the *Silverberg III* defendants, plus Judges Roberts and Anders, the ODC, and ODC Counsel, and asserted essentially the same causes of action as *Silverberg III.*[8] *Silverberg IV* incorporated the *Silverberg III* Amended Complaint *in toto*, but added allegations about the disciplinary proceedings, including assertions that the ODC and ODC Counsel are among the conspirators perpetrating the "proxy war," that the allegations of misconduct against Silverberg lack foundation, and that the ODC did not conduct a "proper/legitimate" investigation. *Id.* at *9 (summarizing *Silverberg IV* allegations about disciplinary proceedings); *see also Silverberg IV*, 2025 WL 1314088, at *3 (same).

[8] The *Silverberg III* Amended Complaint included common law claims for conversion and tortious interference with business relations. The *Silverberg IV* Amended Complaint omitted those claims but added a claim for defamation.

This Court dismissed the *Silverberg III* Amended Complaint based on the *Rooker-Feldman* doctrine, finding dismissal with prejudice warranted based on the futility and inequity of allowing amendment. (*See Silverberg III* Sept. 30, 2024 Order, ECF No. 171; Oct. 24, 2024 Memorandum, ECF No. 173). The Court dismissed the *Silverberg IV* Amended Complaint based on the *Rooker-Feldman* and *Younger* doctrines and Eleventh Amendment, judicial, and quasi-judicial immunity, again finding dismissal with prejudice warranted based on futility and inequity. (*See Silverberg IV* Mar. 31, 2025 Order, ECF No. 118; May 5, 2025 Memorandum, ECF No. 121.) Plaintiff appealed the dismissals of *Silverberg III* and *IV*.[9] On August 18, 2026, the Third Circuit modified the dismissal Orders in both cases to be without prejudice as to certain claims and affirmed the Orders as modified. *Silverberg III & IV*, 2026 WL 2412522, at *7.

The Third Circuit's decision noted the plenary standard of appellate review applicable to a district court's dismissal orders and application of the *Rooker-Feldman* and *Younger* doctrines and, to the extent possible, construed the *Silverberg III* and *IV* claims "such that the District Court had subject matter jurisdiction." *Id.* at *3 nn.5, 7 (also noting that an appellate court "may affirm a district court's judgment on any basis supported by the record"). The Court determined that with the exception of claims as to which "(1) the District Court lacked subject matter jurisdiction under the *Rooker-Feldman* doctrine or (2) dismissal was proper on Eleventh Amendment immunity grounds," Silverberg's claims were "properly dismissed on the merits, with prejudice" based on judicial and quasi-judicial immunity and/or for failure to state a claim. *Id.* at *3 n.7; *see also id.*

---

[9] In *Silverberg III*, Plaintiff also appealed the Court's August 7, 2023 order denying his motion for partial summary judgment, and its October 25, 2024 order dismissing Plaintiff's motion for partial summary judgment that was pending when the Court dismissed the Amended Complaint. (*See Silverberg III*, ECF Nos. 56, 174.)

at *7 ("The District Court was correct to dismiss all claims in [*Silverberg III* and *IV*]. For the most part, dismissal with prejudice was warranted.").

Specifically, the Court held that dismissal with prejudice was warranted (1) based on quasi-judicial immunity as to claims against ODC counsel in their in their individual capacities for injunctive or declaratory relief; (2) based on judicial immunity as to all claims against Judge Roberts and Judge Anders premised on their judicial actions in the Tax and PUFTA Cases; (3) for failure to state a claim as to claims against Judge Anders to the extent he acted outside his judicial capacity in lodging a complaint with ODC; (4) for failure to state a claim as to all claims against DuPont, Dow, Corteva, IFF, Avantor, Liberty Mutual, William Penn, Ballard, Breen, Gupta, Fibig, Long, Buckley, Liveris, and Haas; and (5) for failure to state a claim as to Silverberg's RICO, § 1983, and state law claims against the City Defendants, Gellert Scali, Seitz, Vanguard, the ODC, ODC Counsel, Judges Roberts and Anders, and all John Does associated with the Defendant entities. *Id.* at *4-6.

**D. *Silverberg V***

1. *Procedural History*

On May 27, 2025, less than two months after filing his appeal of the Court's *Silverberg IV* dismissal Order and only 11 days after issuance of the Pennsylvania Supreme Court's Suspension Order, Plaintiff filed *Silverberg V*. The Joint Defendants filed the Injunction/Dismissal Motion on July 3, 2025. On July 31, 2025, the Court issued an Order staying Defendants' deadlines to respond to the Complaint, staying all discovery, and precluding the filing of further pleadings or amended pleadings pending further order. ("Stay Order," ECF No. 22.) The next day, Plaintiff filed a notice of appeal from the Stay Order. (ECF No. 23.) On August 4, 2025, the Court issued an Amended Order clarifying that the Court's Stay Order had not granted or otherwise ruled on the Injunction/Dismissal Motion. (ECF No. 26.) The same day, William Penn and Haas filed the

Motion to Dismiss (ECF No. 25). On March 30, 2026, the Third Circuit dismissed Silverberg's appeal of the Stay Order (and Amended Stay Order) for lack of appellate jurisdiction because those orders were not final decisions under 28 U.S.C. § 1291, injunctions under 28 U.S.C. § 1292(a)(1), or otherwise immediately appealable. (ECF No. 35.) The Third Circuit also denied Silverberg's motion for summary action filed in the appeal. (*Id.*)

2. *The Silverberg V Complaint*

The *Silverberg V* Complaint names all the *Silverberg IV* Defendants, the Disciplinary Board, its Chairman Neft, and Board Member Senoff, and asserts the same causes of action as *Silverberg IV*. (Compl., ECF No. 1.) Although the Complaint asserts that "Plaintiff is not challenging the decision of the Pennsylvania Supreme Court" (*see id.*, ¶ 84 n.14), and conspicuously omits the term "proxy war," it is an obvious and poorly disguised effort to frame the disciplinary proceedings as part of the same ever-expanding conspiracy alleged in Silverberg's previous lawsuits. For example, the Complaint alleges:

> Defendants' actions in connection with the Tax/PUFTA and disciplinary matters were not factually and/or legally supported, and/or based on a genuine, good faith belief that plaintiff had engaged in wrongful, unlawful, and/or unethical conduct, but rather were intended to deter, dissuade, discourage, and/or prevent the publication of plaintiff's anticipated book and/or any related claims in connection with defendants' wrongful/unlawful activities, to interfere with and undercut plaintiff's allegations/claims against defendants, and to retaliate against plaintiff for engaging in protected activity.

(*id.* ¶ 52; *see also id.* ¶¶ 105, 111, 126, 129, 131, 147.) Many of the background "factual" allegations paraphrase or restate verbatim all or parts of the background allegations of *Silverberg IV* (and the incorporated allegations of *Silverberg III*) (*see, e.g.*, *id.* ¶¶ 45, 48-72). In addition, while the Complaint does not expressly state that it incorporates the entirety of the *Silverberg III* and *IV* Amended Complaints, it essentially does just that. (*See id.* ¶ 45 (prefacing allegation with "for the same reasons described in the SIII and SIV Amended Complaints"), ¶ 50 ("As set for the

the SIII/SIV Amended Complaints"), ¶ 113 (incorporating in full "the damages and losses described in SIII and SIV"; *see also id.* ¶¶ 87, 111, 129.)

## III. LEGAL STANDARDS

### A. Pleading Standards Under Fed. R. Civ. P. 8 and 9(b)

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Rule 8 further requires that "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). "Taken together, Rules 8(a) and [8(d)(1)] underscore the emphasis placed on clarity and brevity by the federal pleading rules." *In re Westinghouse Secs. Litig.*, 90 F.3d 696, 702 (3d Cir. 1996) (citing Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1217 at 169 (2d ed. 1990)). The complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Alleged claims that rely on nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor will "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557.

Complaints that constitute "shotgun" or "kitchen sink" pleadings do not satisfy the requirements of Rule 8. *See Bartol v. Barrowclough*, 251 F. Supp. 3d 855, 859 (E.D. Pa. 2017). "The Third Circuit has criticized 'the all too common shotgun pleading approach' to complaints," which is contrary to the mandates of Rule 8(a)(2). *Id.* (quoting *Hynson v. City of Chester Legal Dep't*, 864 F.2d 1026, 1031, n.13 (3d Cir. 1988)). The Court of Appeals for the Eleventh Circuit has produced much of the caselaw addressing shotgun pleadings, and "district courts within the

Third Circuit often cite to the Eleventh Circuit for this law." *Id.* at 859, n.3; *see also Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1320-1323 (11th Cir. 2015). The Eleventh Circuit has categorized shotgun pleadings into four types: (1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts"; (2) a complaint that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) a complaint that does "not separat[e] into a different count each cause of action or claim for relief"; and (4) a complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland*, 792 F.3d at 1321–23; *see also Bartol*, 251 F. Supp. 3d at 859 (quoting *Weiland* categorization of shotgun pleadings).

**B. Motions to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6)**

A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction may present either a "facial" or "factual" challenge. *Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 357-58 (3d Cir. 2014). "A facial attack, as the adjective indicates, is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court. . . ." *Id.* at 358. A facial challenge "calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6)." *Id.* "A factual attack, on the other hand, is an argument that there is no subject matter jurisdiction because the facts of the case . . . do not support the asserted jurisdiction." *Id.* When evaluating a factual challenge, a court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Braun v. Philadelphia Inquirer, LLC*, No. 22-4185, 2023 WL 7544160, at *2 (E.D. Pa. Nov. 13, 2023) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). In this case, as in *Silverberg I, III* and *IV*, application of the *Rooker-Feldman* doctrine

involves a facial challenge to subject matter jurisdiction. *See Silverberg III*, 2024 WL 4566110, at *11.

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570.) "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plaintiffs may plead allegations based upon information and belief, "so long as there are no 'boilerplate and conclusory allegations' and '[p]laintiffs . . . accompany their legal theory with factual allegations that make their theoretically viable claim plausible.'" *McDermott v. Clondalkin Group, Inc.*, 649 F. App'x 263, 267-68 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002)).

Under the Rule 12(b)(6) standard, a court must accept a complaint's well-pleaded factual allegations as true, but "legal conclusions couched as factual allegations, conclusory factual allegations, and threadbare recitations of a cause of action are insufficient to state a facially plausible claim." *Iqbal*, 556 U.S. at 678-79. Moreover, "[t]he Third Circuit has made clear . . . that 'the fact that we must accept the plaintiffs' version of the facts as true does not mean that we must accept plaintiffs' characterization of those facts.'" *Kellogg Brown & Root Servs., Inc. v. United States*, 102 F. Supp. 3d 648, 655 (D. Del. 2015) (quoting *Fisher Bros. Sales v. United States*, 46 F.3d 279, 286 (3d Cir.1995)). Under Rule 12(b)(6), "a complaint must be dismissed if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, the complaint fails to show that the plaintiff has a plausible claim for relief." *Swope v. Northumberland Nat. Bank*, No. 14-4020, 2015 WL 4591794, at *2 (3d Cir.

July 30, 2015) (internal quotation marks and citation omitted).

## IV. DISCUSSION

The Motions before the Court seek dismissal of the Complaint, and the Joint Defendants' Motion additionally asks the Court to impose a pre-filing injunction to put an end to Silverberg's vexatious litigation. The Joint Defendants' Motion discusses dismissal based on the *Rooker-Feldman* doctrine and as to the numerous other grounds for dismissal, it incorporates their previous motions to dismiss *Silverberg III* and *IV.* William Penn and Haas likewise primarily rely on and incorporate their motions to dismiss in *Silverberg III & IV.*

The Court has reviewed the *Silverberg V* Complaint in detail to assess the sufficiency of its allegations and plausibility of the claims it asserts. The results of that assessment follow, after which we address application of the *Rooker-Feldman* doctrine and the threshold non-merits issue of Eleventh Immunity, then the sufficiency of Silverberg's claims.

### A. Silverberg V Allegations[10]

As an initial matter, we note that among other grounds for dismissal, Defendants have argued that the Complaint is deficient because it fails to comply with the pleading standards of Rule and 8 and is a "shotgun" pleading. The Court agrees. Although courts generally refer to the four types of "shotgun" or "kitchen sink" pleadings noted in the Legal Standards section *supra*, the "unifying characteristic" of such pleadings "is that they fail to one degree or another, and in

[10] "Normally, *pro se* litigants benefit from liberal construction of their filings. But that rule arguably does not apply [where the *pro se* litigant] is an attorney." *McKnight v. Buck*, No. 26-7830, 2026 WL 3136785, at *2 (E.D. Pa. Oct. 20, 2026) (quoting *In re Gurvey*, No. 22-2562, 2022 WL 4461391, at *1 n.1 (3d Cir. Sept. 26, 2022) (per curiam)). Silverberg is an attorney who has litigated extensively in this court, and "this doctrine is and should be inapplicable to the documents he submits." *Wilson v. Travelers Ins. Co.*, No. 14-920, 2015 WL 1422569, at *9 (E.D. Pa. Mar. 30, 2015). In the Court's view, affording lenient construction is particularly inappropriate as to Silverberg, given his vexatious litigation history in this case and, apparently, in the *Jackson* litigation, in which the Court sanctioned him twice for similar conduct. *See, e.g.*, *Jackson*, No. 05-4988, 2009 WL 773936, at *1-2.

one way or another, to give the defendants adequate notice of the claims against them and the grounds on which each claim rests." *Bartol v. Barrowclough*, 251 F.Supp.3d 855, 859 (E.D. Pa. 2017). The *Silverberg V* Complaint is an example of three of the four types of shotgun pleadings.

First, it "contain[s] multiple counts where each count adopts the allegations of all preceding counts." *Weiland*, 792 F.3d at 1321. Not only does each count incorporate every preceding allegation of the entire *Silverberg V* Complaint (*see*, *e.g.*, ¶¶ 86, 149), it also incorporates many, and arguably all, of the combined 562 paragraphs of allegations in the *Silverberg III* and *IV* Amended Complaints. (*See* Compl. ¶¶ 45, 87, 111, 113, 129.) It is also "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action," which number in the hundreds if we consider the incorporated allegations of the *Silverberg III* and *IV* complaints. *Id.* at 1322. Finally, it "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1323. The Complaint does this not just in the paragraphs alleging its causes of action, but in background allegations. (*See*, *e.g.*, ¶¶ 45, 51.) Although a court may *sua sponte* dismiss a complaint for failure to comply with Rule 8(a), we will not do so, primarily because such dismissals are generally without prejudice and neither the Court nor, we are sure, the Defendants wish to analyze another of Plaintiff's complaints in this litigation.

Turning to the substance of the Complaint's allegations, we have followed the three-step process of *Twombly* and *Iqbal*, and after noting the required elements of Silverberg's claims, identified the Complaint's allegations that are not entitled to an assumption of truth because they are legal conclusions couched as factual allegations, conclusory factual allegations, plaintiffs' characterization of those facts, and/or threadbare recitations of a cause of action insufficient to state a facially plausible claim. *Iqbal*, 556 U.S. at 678-79. By the Court's count, and excluding

the paragraphs identifying the parties and the bases for jurisdiction, the Complaint has approximately 38 paragraphs of "Factual Allegations." (Compl. ¶¶ 45, 48-85.) Applying a generous standard to assess which of these paragraphs are well-pleaded factual allegations, the Court concludes that, at a minimum, the following paragraphs (including their footnotes) are not entitled to an assumption of truth and should be disregarded: ¶¶ 45, 51-52, 56, 64-67, 70-72, 79, 81-82, and 84. The Court notes that to the extent other paragraphs in the Complaint contain factual allegations that would otherwise be entitled to an assumption of truth, they also contain and/or are followed by allegations stating unsupported and unwarranted conclusions and inferences that do not follow from the alleged fact(s) and are examples of logical fallacies such as "fact-to-fiction fallacy," *post hoc ergo propter hoc*, assertions, and *non-sequiturs*.[11] The foregoing assessment eliminates most, if not all, of the supporting allegations set forth in the paragraphs alleging Plaintiffs' twelve causes of action. We evaluate the plausibility of Plaintiff's claims based on the remaining allegations as follows.

### B. ***Rooker-Feldman* and Eleventh Amendment Immunity**

#### 3. *The Rooker-Feldman Doctrine Prohibits This Court from Revisiting the Suspension Order*

"[The *Rooker-Feldman*] doctrine 'prohibits a federal court from exercising subject[-]matter jurisdiction' in certain cases involving state-court judgments." *Silverberg I*, 847 F. App'x at 154 (quoting *Allen v. DeBello*, 861 F.3d 433, 438 (3d Cir. 2017)). The following four requirements must be satisfied for *Rooker-Feldman* to apply:

---

[11] *See* Bo Bennett, Ph.D., *Logically Fallacious,* *https://www.logicallyfallacious.com/fallacies* (last visited Oct. 30, 2026) (describing fact-to-fiction fallacy as "[a]ttempting to support a narrative or argument with facts that don't support the narrative or argument," a *non-sequitur* as "[w]hen the conclusion does not follow from the premises," and *post hoc ergo propter hoc* as "[c]laiming that because event Y followed event X, event Y must have been caused by event X, without properly establishing causality").

> (1) the federal plaintiff lost in a state court judicial proceeding; (2) the state court judgment or decree was rendered before the federal action was filed;[12] (3) the federal plaintiff complains of injuries caused by the state court judgment; and (4) the federal plaintiff invites the district court to review and reject the state court judgment.

*Merritts v. Richards*, 62 F.4th 764, 774 (3d Cir. 2023) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., 544 U.S. 280, 284 (2005); *Great W. Mining & Min. Corp. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010)).

The Third Circuit has observed that the third and fourth requirements above "are the key to determining whether a federal suit presents an independent, non-barred claim." *Great W. Mining*, 615 F.3d at 166 (describing requirements in a different order with the third above listed as the second). In particular, the *Rooker-Feldman* doctrine concerns injuries "produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." *Id*. at 167 (quoting *Hoblock*, 422 F.3d at 88). The doctrine does not bar federal courts from hearing claims that are "independent" of the state-court judgment and stem from "other sources of injury, such as a third party's action." *Great W. Mining*, 615 F.3d at 168 (citing *McCormick v. Barverman*, 451 F.3d 382, 392 (6th Cir. 2010)). In this task, "[a] useful guidepost is the timing of the injury, that is, whether the injury complained of in federal court existed prior to the state-court proceedings and thus could not have been caused by those proceedings. (*Id.*) (internal quotation omitted).

Courts have also noted that "[a] plaintiff impermissibly challenging a state-court judgment may do so directly, by expressly asking a federal court to alter or overturn the judgment, or indirectly, by asking the federal court to afford relief that in some way nullifies or invalidates the

[12] The preceding state court judgment must be "effectively final," meaning that "(i) the highest state court has issued a terminal ruling; (ii) a lower state court has issued a ruling for which the time to appeal has expired, or the parties have voluntarily terminated the case; or (iii) all questions of federal law have been resolved by the highest state court, notwithstanding any surviving state law or factual issues." *Merritts*, 62 F.4th at 776, n.8.

state-court judgment." *Deeck v. Singer*, No. 24-1929, 2024 WL 3889097, at *3 (E.D. Pa. Aug. 20, 2024); *see also Kuznicki v. Nat'l Church Residences of Penn Hills, PA,* No. 23-2143, 2024 WL 129842, at *3 (W.D. Pa. Jan. 11, 2024) (noting that court "cannot directly or indirectly review, negate, void or provide relief that would invalidate" state court judgment).

Here, the first three *Rooker-Feldman* requirements are satisfied as the disciplinary proceedings resulted in the Suspension Order, which predates this lawsuit and which Silverberg alleges caused him injury. Nonetheless, in an apparent effort to preempt application of *Rooker-Feldman*, the Complaint asserts that Plaintiff "is not challenging the decision of the Pennsylvania Supreme Court." (Compl. ¶ 84 n.14.) Notwithstanding this disclaimer, Silverberg alleges that "there was a conspiracy by and between the disciplinary authorities, and the disciplinary authorities and the Pennsylvania Supreme Court, to bring factually and/or legally unsupported charges against plaintiff and that there was a pre-determination to find that plaintiff had violated the RPC regardless of the facts/legal standards, thereby denying plaintiff his Constitutional right to a fair and impartial forum." (*Id.* ¶ 88.) Moreover, Plaintiff demands as relief, *inter alia*, "that the ODC and [Disciplinary Board] immediately be required <u>to take any and all action necessary to restore plaintiff's law license to active state, to expunge plaintiff's record in connection with the disciplinary matter [], and to notify all courts, agencies and/or other that the disciplinary action /decision was erroneous</u>." (*Id.* ¶ 107 (emphasis added).) In the Court's view, Silverberg's "genuflecting to the Rooker–Feldman doctrine"—and his conclusory allegations of improper, collusive conduct by the disciplinary authorities and the Pennsylvania Supreme Court—reveal that Silverberg's essential purpose "is to reverse the judicial decision of the Supreme Court of Pennsylvania, in contravention of *Rooker–Feldman*." *Stern v. Nix*, 840 F.2d 208, 212 (3d Cir. 1988), *cert. denied* 488 U.S. 826 (1988); *see also Reisinger v. Saylor*, No. 20-0126, 2020 WL

3052863, at *2 (M.D. Pa. June 8, 2020) (adopting report and recommendation and holding that under *Rooker-Feldman*, the court could not set aside attorney's disbarment by the Pennsylvania Supreme Court and restore his license); *Barrish v. Cappy*, No. 06-837, 2006 WL 999974, at *1 (E.D. Pa. Apr. 17, 2006) (holding that under *Rooker-Feldman*, court lacked jurisdiction to entertain attorney's action challenging Pennsylvania Supreme Court order suspending him from the practice of law for five years).

Accordingly, the *Silverberg V* Complaint will be dismissed in its entirety without prejudice pursuant to the *Rooker-Feldman* doctrine for lack of subject matter jurisdiction. *See Silverberg III & IV*, 2026 WL 2412522, at *7 (instructing that dismissals for lack of subject matter jurisdiction must be "without prejudice." While the dismissal will be without prejudice, leave to amend will be denied based on futility. *See Pinckney v. Somerset Prob. Child Support Enf't*, No. CV 24-8474, 2025 WL 2346440, at *5 (D.N.J. Aug. 13, 2025) ("While the Court cannot dismiss this Complaint with prejudice, it can deny leave to amend so long as any amendment would be futile.") (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) (determining that dismissal without leave to amend is justified where the amendment would be futile); *see also Kovalev v. Stepansky*, 835 F. App'x 678, 680 & n.2 (3d Cir. 2020) (modifying district court's order dismissing claims with prejudice for lack of subject matter jurisdiction to a dismissal without prejudice and without leave to amend); *Smith v. Allied Retail Props.*, 802 F. App'x 734, 736 n.2 (3d Cir. 2020) (affirming dismissal without leave to amend and without prejudice).

### C. Eleventh Amendment Immunity Bars All Claims against the Disciplinary Board and ODC, and All Claims Against the Judicial Defendants, Board Defendants and ODC Counsel for Actions Taken in Their Official Capacities

The Eleventh Amendment bars civil lawsuits against states, "but also suits for damages against 'arms of the State'—entities that, by their very nature, are so intertwined with the State that any suit against them renders the State the 'real, substantial party in interest.'" *Maliandi v.*

*Montclair State Univ.*, 845 F.3d 77, 83 (3d Cir. 2016) (citation omitted); *see also O'Brien v. Provencher*, No. 26-354, 2026 WL 2644129, at *3 (E.D. Pa. Sept. 8, 2026) (noting that "[b]ecause an official capacity suit against a state official is really a suit against the state," state officials sued in that capacity generally have Eleventh Amendment immunity) (citations omitted). "Such immunity 'is a jurisdictional bar which deprives federal courts of subject matter jurisdiction.'" *Id.* (quoting *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2 (3d Cir. 1996)).

"[T]he Third Circuit has recognized that 'the Commonwealth vests judicial power in a unified judicial system, and all courts and agencies of the [judicial system] are part of the Commonwealth government rather than local entities.'" *Van Tassel v. Lawrence Cnty. Domestic Relations Section*, 659 F. Supp. 2d 672, 694 (W.D. Pa. Sept. 22, 2009) (quoting *Haybarger v. Lawrence Cnty. Adult Probation & Parole*, 551 F.3d 193, 198 (3d Cir. 2008)). "It follows that judges within that system . . . are entitled to Eleventh Amendment immunity for all claims for which they have been sued in their official capacity and to recover damages." *Francis v. Smith*, No. 23-4063, 2025 WL 675437, at *3 (E.D. Pa. Mar. 3, 2025) (citing *Van Tassel*, 659 F. Supp. 2d at 694.) The Disciplinary Board and ODC are components of Pennsylvania's Unified Judicial System and arms of the Commonwealth for purposes of Eleventh Amendment immunity. *See Silverberg III & IV*, 2026 WL 2412522, at *4; *see also O'Brien*, 2026 WL 2644129, at *3 (citing *Callahan v. City of Phila.*, 207 F.3d 668, 672 (3d Cir. 2000)). Individual Disciplinary Board and ODC officials also have Eleventh Amendment immunity for suits for damages against them in their official capacities. *Id. at *4; see also O'Brien,* 2026 WL 2644129, at *3 (citing *Murphy v. Off. of Disciplinary Counsel*, No. 17-1239, 2019 WL 4752059, at *16 (E.D. Pa. Sept. 30, 2019), *aff'd*, 820 F. App'x 89 (3d Cir. 2020)).

Based on the review of the *Silverberg V* Complaint, all of Judge Roberts' and Judge Anders' alleged actions, including Judge Anders' submission of the initial misconduct complaint against Silverberg, were within their judicial capacities. We further conclude that the Complaint does not plausibly allege any actions by the Disciplinary Board Defendants or ODC Counsel outside their official capacities. In fact, the Complaint does not even say whether Plaintiff sues the Judicial Defendants or any or all of the Disciplinary Board Defendants or ODC Counsel in their individual capacities, their official capacities, or both. The Complaint merely states: "At all times relevant and material hereto, unless otherwise stated herein, the individual defendants acted within the course and scope of their employment and in furtherance of their respective employers' business and interests[,] and [a]lternatively, the individual defendants acted in solely in their individual capacities." (Compl. ¶ 44.) This conclusory assertion doesn't allege anything. All of Plaintiff's claims are asserted against the Disciplinary Board, Judicial Defendants, Board Defendants, ODC, and ODC Counsel in their official capacities, and they have Eleventh Amendment immunity from this lawsuit.[13] Accordingly, all claims against these Defendants will be dismissed without prejudice and, based on futility, without leave to amend.

---

[13] While limited exceptions exist to Eleventh Amendment immunity, none of those exceptions applies to Silverberg's claims. The primary exceptions to Eleventh Amendment immunity identified by the Third Circuit are: (1) congressional abrogation, (2) waiver by the state, and (3) suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law under *Ex Parte Young*, 209 U.S. 123, 159-60 (1908). *Pennsylvania Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002) (citing *MCI Telecomm. Corp. v. Bell Atlantic–Pa*., 271 F.3d 491, 503 (3d Cir. 2001)). The first two exceptions clearly are inapplicable because "Congress did not intend to abrogate Eleventh Amendment immunity by enacting 42 U.S.C. § 1983," and because "the Commonwealth of Pennsylvania has enacted 42 Pa. C.S. § 8521(b), which expressly indicates that the Commonwealth has not waived its Eleventh Amendment immunity from suit in federal courts." *Murphy*, 2019 WL 4752059, at *16 n.23 (citing *Quern v. Jordan*, 440 U.S. 332, 344–45 (1979), regarding the first exception and 42 Pa. C.S. § 8521(b) regarding the second exception).

The *Ex Parte Young* exception also does not apply. First, the disciplinary proceedings concluded with the Pennsylvania Supreme Court's Suspension Order, and Silverberg does not allege any ongoing violation of federal law. *See*, *e.g.*, *Haagensen v. Supreme Ct. of Pennsylvania*, 651 F. Supp. 2d 422, 432–33 (W.D. Pa. 2009) (*Ex Parte Young* did not apply where plaintiff alleged no ongoing violation of law and only sought an order establishing that Pennsylvania Supreme Court and its Disciplinary Board acted without

### D. All Claims Dismissed by the Third Circuit with Prejudice in *Silverberg III* and *IV* are Barred by *Res Judicata*

The doctrine of *res judicata*, or claim preclusion, "applies when 'there has been (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action.'" *Jackson v. Dow Chem. Co*., 518 F. App'x 99, 101 (3d Cir. 2013) (quoting *Lubrizol Corp. v. Exxon Corp*., 929 F.2d 960, 963 (3d Cir.1991)). "The doctrine 'is not a mere matter of technical practice or procedure but a rule of fundamental and substantial justice.'" *Id.* (quoting *E.E.O.C. v. U.S. Steel Corp*., 921 F.2d 489, 492 (3d Cir. 1990)). "It is 'central to the purpose for which civil courts have been established, the conclusive resolution of disputes,' and seeks to avoid 'the expense and vexation' of multiple lawsuits, while conserving judicial resources and fostering reliance on judicial action 'by minimizing the possibility of inconsistent decisions.'" *Id.*; *see also Davis v. Wells Fargo*, 824 F.3d 333, 341-42 (3d Cir. 2016).

In this litigation, the Third Circuit exercised plenary review of this Court's dismissals of *Silverberg III* and *IV*, assessed the Amended Complaints in those actions and determined that, with the exception of dismissals based on the *Rooker-Feldman* doctrine and Eleventh Amendment immunity, both Complaints and all Silverberg's claims were properly dismissed on the merits with prejudice based on judicial and qualified judicial immunity and for failure to state a claim. *Silverberg III & IV,* 2026 WL 2412522, at *4-7. Thus, the Third Circuit's decision operated as a

---

jurisdiction when they sanctioned her), *aff'd sub nom. Haagensen v. Supreme Ct. of Penn*., 390 F. App'x 94 (3d Cir. 2010). With request to Silverberg's vague requests for relief enjoining Defendants from engaging in "similar conduct" or "further violations of [his] rights." (Compl. ¶¶ 107(c), 114(c)), those are requests for relief based on purported past violations of federal law, not allegations of ongoing violations. *Merritts*, 62 F.4th at 772. Second, as discussed *infra*, the Complaint does not plausibly allege a violation of any constitutional right, and without such a violation, there is no entitlement to "'any relief, injunctive or otherwise.'" *Walker v. Beard*, 244 F. App'x 439, 441 (3d Cir. 2007) (quoting *Klay v. United Healthgroup, Inc*., 376 F.3d 1092, 1097–98 (11th Cir. 2004)).

final adjudication on the merits for preclusion purposes. The other requirements for application of *res judicata* are also met. Although Silverberg has named new defendants, recast his theory, and adapted his allegations in this Complaint and its predecessors, *res judicata* applies "against a plaintiff who has previously asserted essentially the same claim against different defendants where there is close or significant relationship between successive defendants." *Id.* at 102 (citation and quotation marks omitted). Claim preclusion turns not on the specific legal theory asserted but on the essential similarity of the underlying events that give rise to the various legal claims. *Id.* (citing *United States v. Athlone Industries, Inc.*, 746 F.2d 977, 983 (3d Cir.1984); *Davis v. United States Steel Supply*, 688 F.2d 166, 171 (3d Cir.1982) (*en banc*)). Here, this case and the two immediately preceding ones are not merely similar, they are virtually identical in substance, naming the same defendants—some for the fifth time—and asserting essentially the same claims based on variations of the same theory.

Accordingly we conclude that all Plaintiff's claims are barred by *res judicata* and dismissed with prejudice as to: (1) all claims against the Judicial Defendants, the ODC, and ODC Counsel as dismissed by the Third Circuit based on judicial immunity and for failure to state a claim; and (2) all claims against all remaining Defendants as dismissed by the Circuit for failure to state a claim.

### E. Immunity Doctrines Bar Silverberg's Claims Against the Judicial Defendants, the Disciplinary Board, and the ODC[14]

#### 1. *Judicial Immunity*

Judges have absolute immunity from suit for their actions in a judicial capacity. *Silverberg III & IV*, 2026 WL 2412522, at *4 (citing *Azubuko v. Royal*, 443 F.3d 302, 303-04 (3d Cir. 2006)).

[14] Dismissals based on judicial, quasi-judicial, and prosecutorial immunity are pursuant to Rule 12(b)(6). *See Shepherd v. Ferman*, No. 25-6105, 2025 WL 3706608, at *2 (E.D. Pa. Dec. 22, 2025); *Bright v. Hoebich*, 24-9625, 2025 WL 1311401, at *4 n.4 (D.N.J. May 6, 2025; *Harr v. Buczak*, No. 21-1555,

Analysis of whether a judge acted in a judicial capacity "must focus on the general nature of the challenged action, without inquiry into such 'specifics' as the judge's motive or the correctness of his or her decision." *Gallas v. Supreme Ct. of Pennsylvania*, 211 F.3d 760, 769 (3d Cir. 2000). An act is judicial if it is "a function normally performed by a judge" and the parties "dealt with the judge in his judicial capacity." *Figueroa v. Blackburn*, 208 F.3d 435, 443 (3d Cir. 2000)); *see also Sawicki v. Wilson*, No. 25-4884, 2025 WL 3637995, at *4 (E.D. Pa. Dec. 15, 2025) (holding that judicial immunity barred attorney plaintiff's individual-capacity claims against judge for presiding over her client's case and reporting her to the Disciplinary Board), *aff'd*, No. 25-3581, 2026 WL 413181 (3d Cir. Feb. 13, 2026), *cert. denied*, No. 26-181, 2026 WL 3053491 (U.S. Oct. 13, 2026). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he acted in the 'clear absence of all jurisdiction.'" *Azubuko*, 443 F.3d at 303 (quoting *Stump v. Sparkman*, 435 U.S. 349, 356 -57 (1978)).

Plaintiff's Complaint fails to plausibly allege any actions by the Judicial Defendants outside their judicial capacity. Accordingly, the Judicial Defendants have absolute immunity from this lawsuit and all claims asserted therein, and they are dismissed with prejudice.

2. *Quasi-judicial Immunity*

"Quasi-judicial immunity bars suits against persons 'who perform functions closely associated with the judicial process'" and, thus, it barred individual-capacity claims against court administrator, Disciplinary Board member and counsel, judge and attorney who reported plaintiff to the Disciplinary Board, and witnesses who testified at disciplinary hearing. *Sawicki*, 2025 WL

---

2024 WL 4064139, at *7 (W.D. Pa. Sept. 5, 2024). Dismissal with prejudice on these immunity grounds is also warranted because amendment would be futile. *Bright*, 2025 WL 1311401, at *4 n.4.

3637995, at *4–5 (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985)). "Numerous federal courts in this Commonwealth have concluded that Disciplinary Board members and ODC members are protected by quasi-judicial immunity." *Murphy*, 2019 WL 4752059, at *18 (collecting cases); *see also Ostrowski v. Killion*, No. 14-1727, 2015 WL 5286622, at *4 (M.D. Pa. Sept. 10, 2015) (explaining that "[t]he Third Circuit has held that disciplinary counsel and hearing committee members perform 'discretionary acts' when they prosecute, consider, or rule on disciplinary actions and, therefore, are immune from civil suit under the quasi-judicial immunity doctrine"); *Nguyen Vu v. City of Philadelphia*, Civ. A. No. 10-953, 2012 WL 1222628, at *8 (E.D. Pa. Apr. 11, 2012) (concluding that ODC counsel were entitled to quasi-judicial immunity from claims relating to "quasi-judicial functions they performed as prosecuting attorneys for the Disciplinary Board of the Pennsylvania Supreme Court"); *Haagensen v. Supreme Ct. of Pennsylvania*, 651 F. Supp. 2d 422, 433 (W.D. Pa. 2009) (explaining that "quasi-judicial immunity bar[s] claims against state bar disciplinary members" and concluding that "the Disciplinary Board Members ... who issued a report and sat as a hearing committee for the Board, are entitled to quasi-judicial immunity"), *aff'd sub nom. Haagensen v. Supreme Ct. of Penn.*, 390 F. App'x 94 (3d Cir. 2010). Because quasi-judicial immunity bars Plaintiff's individual-capacity claims against the Judicial Defendants, Board Defendants, and ODC Counsel, those claims are dismissed with prejudice.

3. *Prosecutorial Immunity*

Disciplinary officials and counsel have prosecutorial immunity from claims against them concerning their performance of duties, including their conduct in disciplinary hearings, investigations, and decisions to initiate or continue a proceeding. *See Sawicki*, 2025 WL 3637995, at *5; *see also Kwasnik v. Leblon*, 228 Fed. Appx. 238, 244 (3d Cir. 2007) (holding that prosecutorial immunity precluded suit against disciplinary committee members), *cert. denied*, 552

U.S. 980 (2007). This immunity even applies to allegations that prosecutors withheld exculpatory evidence. *See Clark v. Vernon*, 228 Fed. App'x 128, 131 (3d Cir. 2007), *cert. denied*, 552 U.S. 954 (2007); *Yarris v. County of Delaware*, 465 F.3d 129, 137 (3d Cir. 2006). Accordingly, Plaintiff's claims against the Board Defendants and ODC Counsel are barred by prosecutorial immunity and dismissed with prejudice.

**F. The Complaint Fails to State Any Claims Against Any Defendant**

1. *Section 1983 Claims*

Plaintiff's § 1983 claims are deficient and will be dismissed for several reasons. First, "A 'person' under the meaning of Section 1983 does not include States or state officials acting in their official capacities." *Nguyen*, 2012 WL 1222628, at *7 (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 63 (1989)). Thus, neither the ODC nor the Disciplinary Board is a "person" amenable to suit under § 1983. *See L. Offs. of Christopher S. Lucas & Assocs. v. Disciplinary Bd. of Supreme Ct. of Pennsylvania*, 320 F. Supp. 2d 291, 296 (M.D. Pa. 2004), *aff'd sub nom. L. Offs. of Lucas ex rel. Lucas v. Disciplinary Bd. of Supreme Ct. of PA*, 128 F. App'x 235 (3d Cir. 2005). Second, the individual state defendants sued in their official capacities are not "persons" amenable to suit under § 1983. *Murphy*, 2019 WL 4752059, at *16 (citing *Will*, 491 U.S. at 71).

Third, Plaintiff fails to plead any facts that could establish municipal liability. Section 1983 does not permit the City to be held vicariously liable for the acts of its employees. *See Mulholland v. County of Berks*, 706 F.3d 227, 237 (3d Cir. 2013). A complaint that includes no factual allegations regarding a municipal policy or custom cannot survive a motion to dismiss. *See, e.g., Breslin v. City & County of Phila.*, 92 F.R.D. 764, 765 (E.D. Pa. 1981). Fourth, Plaintiff pleads no facts that could establish supervisory liability as to any individual Defendant. "[I]t is well-settled that supervisory liability cannot be predicated solely on a respondeat superior theory." *Sheils v. Bucks Cty. Domestic Relations Section*, 921 F. Supp. 2d 396, 417 (E.D. Pa. 2013).

Plaintiff's conclusory and unadorned allegations that unspecified Defendants "engage in a policy, practice and/or custom of utilizing legal and/or administrative process/procedures for wrongful/unlawful purposes" and that certain individual Defendants are "policy-making official[s]" are meaningless. Plaintiff's § 1983 claims will be dismissed with prejudice.

2. *RICO Claims*

To plead a violation of § 1962, "plaintiffs must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004) (citing *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). In addition, a complaint must plausibly allege at least two predicate acts of racketeering activity. *See* 18 U.S.C. § 1961(1), (5). Silverberg purports to allege four predicate acts: (1) extortion under 18 U.S.C. § 1951, (2) witness tampering under 18 U.S.C. § 1512, (3) obstruction of justice under 18 U.S.C. § 1503, and (4) mail and wire fraud under 18 U.S.C. §§ 1341 and 1343. Plaintiff's RICO mail and wire fraud claims are subject to Rule 9(b)'s heightened pleading standard "[i]ndependent of the standard applicable to Rule 12(b)(6) motions." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). The Complaint fails to plausibly allege the elements of Plaintiff's RICO claims or the required predicate acts of racketeering. Because Silverberg's RICO claims fail, so too does his derivative claim for RICO conspiracy. *See Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir. 1993). Plaintiff's RICO claims will be dismissed with prejudice.

3. *Abuse of Process*

In order to state a claim for abuse of process, the plaintiff must allege that the defendant: (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designated, and (3) harm has been caused to the plaintiff. *Douris v. Schweiker*, 229 F. Supp. 2d 391, 404 (E.D. Pa. 2002), *aff'd sub nom. Douris v. Rendell*, 100 F. App'x 126 (3d

Cir. 2004). "There is no cause of action for abuse of process if the claimant, even with bad intentions, merely carries out the process to its authorized conclusion." *Cameron v. Graphic Mgmt. Assocs., Inc.*, 817 F. Supp. 19, 21 (E.D. Pa.1992). Rather, "the gist of an action for abuse of process is the improper use of process after it has been issued, that is, a perversion of it. An abuse is where the party employs it for some unlawful object, not the purpose which it is intended by the law to effect." *Douris*, 229 F. Supp. 2d at 404 (citing *McGee v. Feege*, 535 A.2d 1020, 1023 (Pa. 1987)).

Plaintiff's Complaint fails to allege facts that could support a plausible inference that any of the Defendants used legal process with respect to either the Disciplinary Proceedings or the Tax and PUFTA Cases for a purpose for which the process was not designated. Moreover, the disciplinary proceedings reached their authorized conclusion before Silverberg filed this lawsuit. This claim will be dismissed with prejudice.

4. *Fraud*

For fraud claims, a complaint is subject to Rule 9(b)'s heightened pleading standard "[i]ndependent of the standard applicable to Rule 12(b)(6) motions." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d at 216. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). A party alleging fraud must therefore support its allegations with "the who, what, when, where and how of the events at issue." *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (citations omitted); *see also Feingold v. Graff*, 516 F. App'x 223, 226 (3d Cir. 2013) ("[T]he plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." (quoting *Frederico v. Home*

*Depot*, 507 F.3d 188, 200 (3d Cir. 2007))). The Complaint's allegations fail to plausibly allege fraud, and this claim will be dismissed with prejudice.

5. *Defamation*

When making a defamation claim under Pennsylvania law, a plaintiff must prove (1) the defamatory nature of a communication; (2) its publication by defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion. *Strader v. Home Depot*, No. 24-1202, 2025 WL 2734594, at *3 (W.D. Pa. Sept. 25, 2025) (citing 42 Pa. C.S. § 8343(a); *Balletta v. Spadoni*, 47 A.3d 183, 196-97 (Pa. Commw. Ct. 2012)), *reconsideration den'd*, 2026 WL 1459059 (W.D. Pa. Jan. 8, 2026). The Complaint's allegations fail to plausibly allege defamation, and this claim will be dismissed with prejudice.

6. *Intentional Infliction of Emotional Distress*

To establish a claim for intentional infliction of emotional distress ("IIED") under Pennsylvania law, a plaintiff must demonstrate that a defendant's conduct was extreme and outrageous, that it caused the plaintiff severe emotional distress, and that the defendant acted with the intent to cause that distress or with knowledge that such distress was substantially certain to occur. *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 217 (3d Cir. 2001). An IIED claim will only survive where "'the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Reedy v. Evanson*, 615 F.3d 197, 231-32 (3d Cir. 2010) (quoting *Field v. Phila. Elec. Co.*, 565 A.2d 1170, 1184 (Pa. Super. Ct. 1989)). Plaintiff must have suffered "'some type of resulting physical harm due to the defendant's outrageous conduct.'" *Reedy*, 615

F.3d at 231 (quoting *Swisher v. Pitz*, 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005)). The Complaint fails to plausibly allege defamation, and this claim will be dismissed with prejudice.

7. *Civil Conspiracy*

A civil conspiracy exists where two or more persons combined or agreed to perform an unlawful act or perform an otherwise lawful act by unlawful means. *See Petula v. Mellody*, 588 A.2d 103, 107 (Pa. Commw. Ct. 1991); *Burnside v. Abbott Laboratories*, 505 A.2d 973, 980 (Pa. Super. Ct. 1985). "Civil conspiracy is not an independently actionable claim; rather, 'absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act.'" *Woodward v. ViroPharma Inc.*, No. 3222 EDA 2011, 2013 WL 1485110, at *11 (Pa. Super. Ct. Apr. 3, 2013) (quoting *Goldstein v. Phillip Morris, Inc.*, 854 A.2d 585, 590 (Pa. Super. Ct. 2004)).

To state a claim for civil conspiracy under Pennsylvania law, a plaintiff must allege: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damages." *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313 (3d Cir. 2003). A plaintiff must also allege malice or intent to injure on the part of the alleged conspirators. *See Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (Pa. 1979). The Complaint fails to plausibly the elements of civil conspiracy or any malice or intent to injure, and this claim will be dismissed with prejudice.

**G. Plaintiff's Conduct Warrants a Filing Injunction**

"Under the All Writs Act, 28 U.S.C. § 1651(a), district courts can impose filing injunctions on litigants who have engaged in abusive, groundless, and vexatious litigation." *Kent v. Philadelphia Dep't of Hum. Servs.*, 813 F. App'x 736, 737 (3d Cir. 2020) (citing *Chipps v. U.S. Dist. Court for Middle Dist. of Pa.*, 882 F.2d 72, 73 (3d Cir. 1989)). A court may impose such an

injunction if: "(1) the litigant has been continuously abusing the judicial process; (2) the court provides notice and an opportunity to respond; and (3) the scope of the injunction is 'narrowly tailored to fit the particular circumstances of the case before the District Court.'" *Shaikh v. State of New Jersey-Dep't of Banking & Ins., Div. of Ins.*, No. 25-2445, 2026 WL 172963, at *2 (3d Cir. Jan. 22, 2026) (quoting *Brow v. Farrelly*, 994 F.2d 1027, 1038 (3d Cir. 1993)).

Silverberg's campaign of serial, duplicative federal lawsuits—now in its seventh year—is the type of abusive and vexatious litigation conduct that warrants a tailored filing injunction. In his relentless effort to circumvent or evade the state court proceedings against him, Silverberg has reasserted the same claims based on the same core theory and conclusory allegations in five successive lawsuits, four of which this Court has dismissed at the pleading stage and one of which (his second) Silverberg withdrew under threat of defendants' motion for sanctions. Silverberg's three most recent lawsuits have named more than two dozen entity and individual defendants, including judges, other judicial officers, and government officials, some of whom he has sued in three or more of these actions. In addition to his five lawsuits (and nine complaints), Silverberg has filed multiple motions for temporary restraining orders and/or preliminary injunctions, summary judgment, and sanctions, all of which this Court has denied as meritless or dismissed. Neither this Court's dismissal rulings, nor the Third Circuit decisions affirming them, nor the Pennsylvania Supreme Court's Order suspending Silverberg from the practice of law for five year has deterred Silverberg from repeatedly reasserting the same claims. On the contrary, Silverberg filed his fifth federal lawsuit only 11 days after the Pennsylvania Supreme Court issued its Suspension Order and less than two months after he filed his appeal of this Court's dismissal of his fourth lawsuit.

Silverberg's 7-year pattern of filing meritless and repetitive lawsuits constitutes a continuous abuse of the judicial process and warrants a tailored prefiling injunction. *See*, *e.g.*, *Perlmutter v. Varone*, No. CV 21-5018, 2022 WL 1443426, at *1 (E.D. Pa. May 6, 2022) (imposing pre-filing injunction "[b]ecause Plaintiffs have received numerous decisions on their claims, and because their continued meritless filings consume valuable judicial resources"); *Brown v. Mercadante*, No. CV 15-1593, 2023 WL 6143970 (E.D. Pa. Sept. 20, 2023) (enjoining plaintiff who continued to submit filings despite dismissal with prejudice and made unsupported accusations against judicial figures)*; Jaye v. Shipp*, No. 17-5257, 2018 WL 2278100, at *1 (D.N.J. May 18, 2018) (entering a pre-filing injunction against a pro se litigant to prevent "abuse of the system and futile expense, as Defendants are forced to repeatedly defend against ultimately frivolous lawsuits"); *Danihel v. Off. of the President*, No. 14-6880, 2015 WL 1954269, at *1 (E.D. Pa. Apr. 29, 2015) (enjoining *pro se* plaintiff from "commencing any new civil matters against the named Defendants that relate[] to the subject matter of this action"), *aff'd sub nom. Danihel v. Off. of President*, 640 F. App'x 185 (3d Cir. 2016).

The Court further finds that Silverberg was provided notice of, and the opportunity to respond to, the potential issuance of a pre-filing injunction. Specifically, Silverberg was served with the Joint Defendants' Motion requesting a prefiling injunction, and he twice availed himself of the opportunity to respond. (*See* Silverberg Response and Amended Response, ECF Nos. 16, 20.) *See Lai v. Wei*, 331 F. App'x 143, 145 (3d Cir. 2009) (finding that the notice requirement for a filing injunction was satisfied, where the defendants' motion for sanctions "expressly requested a filing injunction."); *see also Shah v. Turner*, No. 24-05988, 2025 WL 40164, at *6 (D.N.J. Jan. 7, 2025) ("[A] party's motion for sanctions may constitute sufficient notice" of a prefiling injunction.) (citing *Haviland v. Specter*, 561 F. App'x 146, 149 (3d Cir. 2014) (noting that were

plaintiffs had been served with multiple motions for sanctions and where a response was filed to one motion and letters were submitted regarding same, sufficient notice was provided)); *Bishop v. Dep't of Homeland Sec.*, No. 14-5244, 2015 WL 2125782, at *8 (D.N.J. May 6, 2015) (finding that notice requirement was satisfied, where the plaintiff was served with the defendant's motion requesting a filing injunction, and was provided opportunity to respond through an opposition brief), *aff'd sub nom. Bishop v. U.S. Dep't of Homeland Sec.*, 648 F. App'x 180 (3d Cir. 2016).

Finally, the prefiling injunction will be narrowly tailored to the circumstances of Plaintiff's duplicative filings in this action and the previous related actions.

## V. CONCLUSION

For the foregoing reasons, the Joint Motion for Injunction/Dismissal and the Motion to Dismiss will be granted, and *Silverberg V* and all claims asserted therein will be dismissed as set forth in this Memorandum. An appropriate order and pre-filing injunction order will follow.

DATED: 11/18/2026

BY THE COURT:

______________________________
GAIL A. WEILHEIMER, J.